# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

_____
)
LOIS ALT, d/b/a EIGHT IS ENOUGH,    )
)
               Plaintiff,    )     Case No. 2:12-CV-00042-JPB
)
      v.    )
)     **OPPOSITION TO AMERICAN FARM**
UNITED STATES ENVIRONMENTAL    )     **BUREAU FEDERATION AND WEST**
PROTECTION AGENCY,    )     **VIRGINIA FARM BUREAU'S**
)     **MOTION TO INTERVENE**
)
              Defendant.    )
_____)

## EPA'S OPPOSITION TO AMERICAN FARM BUREAU FEDERATION AND WEST VIRGINIA FARM BUREAU'S MOTION TO INTERVENE

Defendant the United States Environmental Protection Agency ("EPA") hereby opposes the American Farm Bureau Federation ("AFBF") and the West Virginia Farm Bureau's ("WVFB's") (collectively, "Movants") motion to intervene ("Mot.") in this case.

Plaintiff Lois Alt challenges an administrative order issued by EPA, in which EPA concluded that Plaintiff has discharged pollutants from a concentrated animal feeding operation ("CAFO") to waters of the United States in violation of the Clean Water Act ("CWA"), and therefore that Plaintiff must apply for a National Pollutant Discharge Elimination System ("NPDES") permit for those discharges.  AFBF and WVFB seek leave to intervene, suggesting that, as "veteran advocates" with "particular expertise in the legal issues at hand,"[1] they may be in a better position to litigate against the EPA on the issues raised in this case than Plaintiff. Movants also raise the concern that other members of their organizations may face similar administrative action.  Mem. at 10.

---

[1] American Farm Bureau Federation and West Virginia Farm Bureau's Memorandum in Support of Motion to Intervene (hereinafter "Mem."), ECF No. 8, at 13.

However, Movants have not demonstrated that they meet the standards for intervention set forth in Federal Rule of Civil Procedure 24.  Movants stated interest in this case – the concern that EPA may issue similar orders to other facilities – is speculative, generalized, and attenuated, and thus insufficient to justify intervention.  Moreover, that interest will not be impaired by this proceeding.  This case concerns a fact-specific determination that impacts only Plaintiff, and any ruling in this case will determine only the rights and obligations of Plaintiff.  Any other administrative orders issued by EPA to Movants' other members may be challenged in separate proceedings, and each such order must be evaluated based on the unique administrative record supporting it.  Finally, Movants bring the exact same claim and seek the exact same relief as Plaintiff, leading to a presumption – which Movants have failed to rebut – that their interests are already adequately represented.  For these reasons and those set forth below, both Movants' request for mandatory intervention under Rule 24(a)(2), as well as their brief, unsupported alternative request for permissive intervention under Rule 24(b)(1)(B), should be denied.

## BACKGROUND

I.      **Statutory and Regulatory Background.**

Congress enacted the CWA in order "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To that end, the Act prohibits the "discharge of any pollutant" to waters of the United States by "any person," unless the discharge complies with the Act.  *Id.* § 1311(a).  The "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source," and "point source" is defined as "any discernable, confined, and discrete conveyance, including but not limited to any . . . concentrated animal feeding operation."  *Id.* § 1362(12)(a) & (14).  "Pollutants" are defined by the Act to encompass a variety of materials discharged into water, including solid wastes, biological materials, or agricultural wastes.  *Id.* § 1362(6).  Thus, the Act generally prohibits the

discharge of materials such as litter or manure from a CAFO into waters of the United States, unless the discharge complies with other specified provisions of the Act.  For example, section 402 of the Act allows regulated entities to obtain authorization to discharge by applying for an NPDES permit and complying with the permit's terms.  *Id.* § 1342(a).

Mirroring the requirements of the Act, EPA's implementing regulations provide that a CAFO "must not discharge" pollutants into waters of the United States "unless the discharge is authorized by an NPDES permit."  40 C.F.R. 122.23(d).  As in the Act, the "discharge of a pollutant" is defined as "any addition of any 'pollutant' … to 'waters of the United States' from any 'point source'"; "pollutant" is defined to include any "solid waste," "biological materials," and agricultural waste"; and "point source" is defined to include CAFOs.  40 C.F.R. § 122.2.

The Act does exempt "agricultural stormwater discharges" from the definition of "point source," and thus from the NPDES permitting requirement. 33 U.S.C. § 1362(14).  However, the term "agricultural stormwater discharges" is limited by EPA regulations to precipitation-related discharges of manure, litter, or process wastewater from a land area where "the manure, litter or process wastewater has been applied in accordance with site-specific nutrient management practices that ensure appropriate agricultural utilization of the nutrients in the manure, litter, or process wastewater."  40 C.F.R. § 122.23(e).[2]  Otherwise, the "discharge of manure, litter or process wastewater to waters of the United States" from land areas where those substances have been applied is "subject to NPDES permit requirements."  *Id.*  Thus, only certain precipitation-

---

[2] Land areas under the control of a CAFO where manure, litter, and process wastewater are so applied are "land application area[s]."  40 C.F.R. § 122.23(b)(3).  While EPA has not amended the definition of "CAFO" to include land application areas, in 2003 it promulgated regulatory language providing that a discharge of manure, litter, or process wastewater "from a CAFO as a result of the application of that manure, litter or process wastewater by the CAFO to land areas under its control" is "subject to NPDES permit requirements, except where it is an agricultural stormwater discharge . . . ."  68 Fed. Reg. 7176, 7197 (Feb. 12, 2003).

related discharges of pollutants from land areas under the control of a CAFO may qualify as "agricultural stormwater discharges" for which no NPDES permit is needed.[3]

When EPA determines that there has been a discharge in violation of the CWA, under section 309 of the Act, EPA may either "issue an [administrative compliance] order requiring such person to comply" or "bring a civil enforcement action" under section 309(b) of the Act. 33 U.S.C. §1319(a)(3). The decision whether to issue an administrative compliance order or proceed directly to court by filing a section 309(b) civil action is committed to the agency's discretion. *See* 33 U.S.C. § 1319(a)(3) (EPA "shall issue an order . . . or shall bring a civil action"); *Heckler v. Chaney,* 470 U.S. 821, 831 (1985) ("whether the particular enforcement action . . . best fits the agency's overall policies" is committed to agency's absolute discretion).

## II.     Factual and Procedural Background.

### A.   EPA's Administrative Order and Plaintiff's Challenge.

On November 14, 2011, EPA issued a compliance order to Plaintiff pursuant to Section 309(a) of the Act. *See* Compl., Ex. A (Findings of Violation and Order for Compliance) ("Order") at 1. The Order described an inspection conducted on June 17, 2011, by EPA representatives at Plaintiff's facility, a poultry CAFO that houses 200,000 chickens. *Id.* ¶¶ 17-28. The Order stated that "EPA representatives observed manure on the ground near the southern end of the poultry houses" that was "exposed in a manner so that it would come into contact with precipitation during rain events." *Id.* ¶ 24. The Order also stated that EPA representatives had observed that "dust" containing "feathers and fine particulates of dander and manure" was being exhausted from poultry house ventilation exhaust vans and settling on the

---

[3] Movants assert multiple times that EPA is impermissibly limiting the scope of the agricultural stormwater discharge exemption. *See, e.g.,* Mot. at 2, 9. As EPA will explain if and when this case proceeds to merits briefing, under the regulatory definition of that term set forth above, it simply has no application here. However, that merits issue is irrelevant to the question currently before the Court: whether intervention is appropriate under Rule 24.

ground, where it "would come into contact with precipitation." *Id.* ¶ 23.  EPA further explained

that the manure and other pollutants observed outside the poultry houses, upon coming into

contact with precipitation,[4] would be carried into nearby man-made ditches, which drain across a

neighboring property to a nearby water body called "Mudlick Run," a perennial stream that

flows to the South Branch Potomac River.  *Id.* ¶¶ 23-26.  Finally, EPA noted that Plaintiff neither

possessed nor had applied for an NPDES permit for her CAFO.  *Id.* ¶ 28.

Based on the facts observed during the inspection, as well as the applicable sections of

the Act and EPA's implementing regulations, EPA concluded in the Order that Plaintiff's poultry

facility "meets the definition of Large CAFO . . . and thus is a 'point source;'" "has discharged

pollutants from man-made ditches via sheet flow to Mudlick Run during rain events[,] generating

runoff without having obtained an NPDES permit;" and thus "is in violation of Section 301 of

the Act and its implementing regulations."  Order ¶¶ 29-33.  EPA therefore ordered Plaintiff to

submit an NPDES permit application to the state permitting authority.[5]

On November 29, 2011, Plaintiff submitted notice to EPA of her intent to comply with

the Order.  Ex. A.  However, on February 13, 2012, counsel for Plaintiff submitted another letter

to EPA stating that Plaintiff did not, in fact, intend to comply with the Order.  Ex. B.  On June

14, 2012, Plaintiff filed this action, raising one claim:  that EPA's "determination that Mrs. Alt's

farm is subject to the CWA's NPDES permitting requirements is . . . arbitrary, capricious, not in

accordance with law, and in excess of EPA's jurisdiction and authority."  Compl. ¶ 53.  Plaintiff

requested that the Court therefore set aside EPA's Order.  Moreover, Plaintiff also requested that

---

[4] EPA noted that the closest weather station to the Alt facility receives an average of 31.84 inches of rain annually.  Order ¶ 27.

[5] EPA authorized the state of West Virginia to administer the NPDES permit program within the state after determining that West Virginia's program for the control of pollutant discharges into navigable waters satisfied the requirements of section 402(b) of the CWA.  48 Fed. Reg. 22,363 (effective May 10, 1982).

the Court "declare" that precipitation that comes into contact with "dust, feathers, or dander from poultry house ventilation fans deposited on the ground" or "small amounts of manure incidentally present on the ground" at her facility is "exempt from NPDES permitting requirements" because it is "agricultural stormwater."  Compl. at 13 (Prayer for Relief).

B.   AFBF and WVFB's Intervention Motion and Proposed Complaint.

On July 19, 2012, AFBF and WVFB moved to intervene in this case.  In their proposed Complaint, AFBF and WVFB assert the same claim as Plaintiff:  that EPA's "determination that Mrs. Alt's farm is subject to the CWA's NPDES permitting requirements is . . . arbitrary, capricious, not in accordance with law, and in excess of EPA's jurisdiction and authority." Complaint of Intervenors American Farm Bureau Federation and West Virginia Farm Bureau ("Proposed Compl."), ¶ 83, July 19, 2012, ECF No. 7-1.  Like Plaintiff, AFBF and WVFB also request that the Court "declare" that precipitation that comes into contact with "dust, feathers, or dander from poultry house ventilation fans deposited on the ground" or "small amounts of manure incidentally present on the ground" is "exempt from NPDES permitting requirements" because it is "agricultural stormwater."  Proposed Compl. at 20 (Prayer for Relief).

## ARGUMENT

### I.   The Standards for Intervention.

A prospective party may intervene as of right under Fed. R. Civ. P. 24(a)(2) if it:

claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  Accordingly, this Circuit has required would-be intervenors to show: "first, an interest sufficient to merit intervention; second, that without intervention, its interest may be impaired; and third, that the present litigants do not adequately represent its interest."

*Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976); *see also Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991).

Where the standard for intervention as of right (also known as "mandatory" intervention) is not met, a court may allow permissive intervention under Rule 24(b)(1)(B) if the movant "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "The words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit . . . ." *Diamond v. Charles*, 476 U.S. 54, 76 (1986).  Even where the minimum standard of articulating a claim or defense that shares a common question of law or fact with the main action is met, it is within the Court's "broad discretion" under Rule 24 to deny the intervention request for any number of reasons.  *McHenry v. C.I.R.*, 677 F.3d 214, 216 (4th Cir. 2012); *League of United Latin Am. Citizens, Council No. 4434 v. Clements ("Clements")*, 884 F.2d 185, 189 (5th Cir. 1989); *see also Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326 (9th Cir. 1977) ("If the trial court determines that the initial conditions for permissive intervention . . . are met, it is then entitled to consider other factors in making its discretionary decision on the issue . . . .").

As discussed below, AFBF and WVFB do not meet the standard for mandatory intervention.  Moreover, they have failed to adequately justify their brief alternative request for permissive intervention, which, in any event, should not be granted for many of the same reasons that mandatory intervention is unavailable.

## II.    Movants Have Not Identified a Significant Protectable Interest.

AFBF and WVFB may not intervene in this action as of right because they have not identified a "significantly protectable interest."  *Donaldson v. United States*, 400 U.S. 517, 531 (1971).  They have failed to meet their burden to show how they or their members have any significant, legally cognizable interest in a determination that is based on the specific factual

7

circumstances of Plaintiff's facility, that is binding on no other facilities, and that therefore has no direct effect on Movants' members.

Movants do not argue that any of their members are directly affected by the administrative order issued to Plaintiff, which applies on its face only to Plaintiff's facility. Rather, Movants point to the possibility that other members of their organizations "may" face similar EPA orders in the future. Mem. at 7. But the possibility that a single, fact-specific determination might affect a future enforcement action against a different facility is too speculative to constitute a substantial legal interest in this litigation. *See ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990) (finding interest too speculative to justify intervention where trade association argued that case could impact its other members' permit obligations). Moreover, "[a]n interest that is 'contingent upon the occurrence of a sequence of events before it becomes colorable' is . . . not sufficient" to satisfy Rule 24(a)(2). *Med. Liab. Mut. Ins. Co. v. Alan Curtic LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) (citation omitted); *see also Wash. Elec. Coop., Inc.  v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (same); *Or. Env. Council v. Or. Dep't of Envtl. Quality*, 775 F. Supp. 353, 358 (D. Or. 1991). While other CAFOs may be subject to administrative orders where they are found to be discharging without a permit, such actions are wholly dependent upon the enforcement discretion of the state and federal permitting agencies. As the Supreme Court noted in *Heckler v. Chaney*:

> "[A]n agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all."

470 U.S. at 831. Moreover, any orders resulting from an agency's decision to exercise its enforcement discretion would be the result of an administrative process unique to that facility,

based on an assessment of the circumstances and operation of that facility and its connection to nearby waters.  Accordingly, Movants' general interest in weighing in on a legal issue that may or may not appear in other enforcement proceedings, which may or may not result from other administrative processes, is too attenuated to justify intervention here.

The cases cited by Movants on this issue (Mem. at 7) do not support a contrary conclusion.  Unlike this action, those cases concerned challenges to regulations or regulatory interpretations of general applicability – not orders or determinations specifically applicable to one particular facility. *See Ohio Valley Envtl. Coal. v. Horinko*, 279 F. Supp. 2d 732 (S.D. W. Va. 2003) (allowing intervention in a challenge to EPA's approval of state regulations); *Pa. Mun. Auths. Ass'n v. Horinko*, 292 F. Supp. 2d 95, 96 (D.D.C. 2003) (allowing intervention in a challenge to EPA guidance documents), *aff'd sub nom.*, *Pa. Mun. Auths. Ass'n v. Johnson*, No. 04-5073, 2005 WL 2491482 (D.C. Cir. 2005).  Thus, Movants' proffered case law on the "significant interest" prong of the mandatory intervention standard is inapplicable.

Movant also point to their "long-standing interest in these issues" and experience litigating against EPA regarding the regulation of CAFOs.  Mem. at 8.  However, litigation expertise does not justify intervention.  *Am. Nat'l Bank & Trust Co. of Chicago v. City of Chicago,* 865 F.2d 144, 147 (7th Cir. 1989) ("[A] group's particular expertise by itself is insufficient to meet the interest requirement.").  Moreover, courts have found the type of generalized interest in the issues asserted by membership-based groups such as Movants insufficient to support intervention in cases concerning property or facility-specific determinations.  *See ManaSota-88*, 896 F.2d at 1322 (denying intervention as of right to association of facilities that contended that "the relief requested could have a profound impact upon the environmental obligations of [movant's] member electric utilities" because "such a

generalized grievance does not impart to [movant] the kind of legally protectable interest in the . . . litigation necessary to support intervention as of right"); *Jewell Ridge Coal Corp. v. Local No. 6167 United Mine Workers of Am.*, 3 F.R.D. 251, 254 (W.D. Va. 1943) ("the Applicant and its component members are intensely 'interested' in the determination of the issues presented by this action . . . just as all other persons in the bituminous coal industry are interested, but such a general interest is certainly not enough for intervention of right"); *see also Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517-518 (7th Cir. 2004).  Indeed, were such generalized interests as those asserted by Movants grounds for intervention, Rule 24 would no longer be "a practical guide to disposing of lawsuits" in a manner "compatible with efficiency and due process," *Nuesse v. Camp,* 385 F.2d 694, 700 (D.C. Cir. 1967), but an open floodgate allowing interest groups to control litigation and inject policymaking into the judicial process.

Finally, even if Movants' interest in these proceedings were significant, as opposed to speculative, attenuated, and generalized, that interest is not legally protectable in this case. Movants have no cognizable legal interest in EPA's fact-specific determination that Plaintiff's CAFO has discharged unlawfully into waters of the United States and so must get a permit.[6] Moreover, to the extent Movants claim a broader interest in how EPA interprets the CWA, *see* Mem. at 9 (arguing that EPA has asserted "novel statutory and regulatory interpretations" and "AFBF and WVFB have strong interests in challenging any such interpretation"), disposition of

---

[6] It is questionable whether Movants even have standing to bring their proposed claim against EPA, which is also a requirement for intervention as of right.  *See Patterson v. Shumate*, No. 88-2195, 1990 WL 122240, at *2 (4th Cir. Aug. 27, 1990) (moving party "must have standing to assert his claim in a separate action.").  Here, Movants have made no showing of standing to assert a claim independent of Plaintiff, whose farm is the sole subject of this suit.  Furthermore, courts have made clear that the precedential effect of an agency interpretation is not sufficient to establish an injury supporting standing.  *See, e.g., Brazos Elec. Power Co-op., Inc. v. FERC*, 208 F. App'x. 2, 3 (D.C. Cir. 2006) ("[O]ur cases are clear that 'mere precedential effect of [an] agency's rationale in later adjudications' does not establish standing.") (citation omitted). Accordingly, should this Court grant Movants' request for intervention as-of-right, the United States reserves the right to move to dismiss Movants' complaint for lack of standing.

this action will not – indeed it cannot – determine the outcome of such issues in future proceedings.  As discussed in further detail in section III below, the decision to issue an administrative order like the one at issue here is, by nature, a fact-specific, case-by-case determination, and such orders can be challenged on both the facts and the law in future proceedings regardless of the outcome of this case.  In contrast, an EPA interpretation of the CWA and its implementing regulations – divorced from a particular enforcement action against a specific facility – can be challenged (to the extent it constitutes final agency action subject to review under the CWA) only in the Courts of Appeals.  *See generally* 33 U.S.C. § 1369(b)(1).  Thus, not only is Movants' generalized interest in the outcome of certain legal issues presented by this case insufficient to justify mandatory intervention, it is also not a legally-protectable interest in this forum.  On these grounds alone, the Court should deny the motion to intervene.

**III.    Movants' Interests Will Not Be Impaired by the Disposal of this Case.**

Not only do Movants lack the type of significant, protectable interest that is a prerequisite for mandatory intervention, they also cannot show that their ability to protect their interests will be practically impaired or impeded by this Court's ruling on the challenged administrative order, a showing that is "necessary to justify their intervention as of right."  *Stokes v. Westinghouse Savannah River Co.,* 206 F.3d 420, 431 (4th Cir. 2000) (denying intervention because "[t]he applicants . . .  failed to make a sufficient showing that the disposition of this action would 'impair or impede' their ability to protect their interests").  While the focus of the inquiry is on the "practical consequences of the litigation," this Court has explained that "incidental effects on legal interests are insufficient; rather, there must be a tangible threat to the applicant's legal interest."  *Geico Gen. Ins. Co. v. Shurak,* No. Civ.A. 5:05CV179, 2006 WL 1210324, *2 (N.D. W. Va. May 3, 2006) (quotation marks and citation omitted).  Whether an interest would be impaired often "depends on whether the decision of a legal question involved in the action would

11

as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding."
*Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982).

Here, Movants claim that this Court's rulings related to the Order "could have significant practical and legal consequences on poultry farmers" they represent. Mem. at 10. However, the resolution of the factual and legal questions presented by Plaintiff will not impact the rights of other facility owners in future enforcement actions or future challenges to EPA enforcement actions. This case concerns an administrative order based on findings such as the location of dust and manure that settles on the ground outside of Plaintiff's poultry houses, the route by which these pollutants drain away from the houses and reach a waterway, the fact that the waterway is mapped on the USGS topographic map as a jurisdictional waterway for purposes of the CWA, and the rainfall data at the closest weather station to Plaintiff's facility. Order at 3-4. The determination of whether the order is lawful will be specific to the facts on which it is based, and thus can neither harm nor benefit other facilities.

Movants argue that this Court will have to decide a legal question that is likely to recur in other cases – specifically, whether an NPDES permit is generally required for discharges of manure, litter, or other pollutants that originate from poultry house ventilation fans. But even if the Court were to decide that question, its decision would apply only to this case. Because other poultry farmers are not parties to this suit and have no direct interest in the Alt farm, they would not be bound by the outcome of this case. *See Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009) (explaining that res judicata only applies where a judgment in a prior suit resolved claims by the *same parties* based on the *same cause of action*). Rather, Movants' members will have the opportunity to challenge any similar administrative orders issued to their facilities if and when such orders issue.

Implicitly recognizing this fact, Movants argue that this Court's decision on legal issues might be considered "persuasive precedent" supporting EPA's issuance of similar orders in the future. *See* Mem. at 10. But that is not a sufficient rational to justify intervention. *See* Order, *Summit Petroleum Corp. v. EPA*, No. 09-4348, ECF No. 006110921321 at 2 (6th Cir. April 7, 2011) ("API's interest in not having [EPA's] ruling used as persuasive authority in future administrative proceedings is not a sufficient legal interest to support intervention") (attached as Ex. C). And while *stare decisis* concerns may sometimes provide a sufficient basis for intervention, the proposed intervenor must show more than a possibility of an impact on future cases. *See United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991) (affirming denial of intervention). For example, in *Shenadoah Riverkeeper v. Ox Paperboard, LLC*, No. 3:11-cv-17, 2011 WL 1870233, *3 (N.D. W. Va. May 16, 2011) (Bailey, J.) this Court allowed intervention because, if the state permitting authority's motion to intervene in a citizen suit had been denied, it "would be forced to bring a separate action concerning the same subject" to protect its interests. Here, Movants allege only that their members' farms "*may* be subject to CWA compliance orders similar to the one EPA issued here." Mem. at 4 (emphasis added). But if that happens, Movants' members will have to separately challenge any such orders regardless of whether Movants are allowed to intervene here, and those challenges will be decided based on the circumstances and operating conditions of the facilities at issue and their connection (or lack thereof) to waters of the United States, regardless of this Court's ruling on the facts at issue with respect to Plaintiff's facility. Thus, Movants members' would have to bring separate actions to challenge any subsequent administrative orders even if they were permitted to intervene here, and those actions will not concern "the same subject" as this case – Plaintiff's facility.

Moreover, potential *stare decisis* effects do not warrant intervention where the would-be intervenors will have the opportunity to challenge any future agency actions adverse to their interests. *Manasota-88*, 896 F.2d at 1323. If EPA or a state permitting authority issues a similar order to another facility, that facility will have the same opportunity that Plaintiff has here to challenge the order. And in the context of such challenges, the disposition of this case will not impair the ability of Movants' members to argue that their facilities have not discharged pollutants to waters of the United States based on the language of the statute and regulations as applied to the facts of their cases. *See Virginia Hosp. Ass'n v. Baliles*, 830 F.2d 1308, 1313 (4th Cir. 1987) ("a nonparty's 'academic interest in the determination of a question of law, or even a substantial interest in establishing favorable precedent under the doctrine of stare decisis,' cannot preclude the nonparty from later relitigating issues determined in the prior suit") (quoting 1B *Moore's Federal Practice* ¶ 0.411(6), at 466).[7]

Contrary to Movants' suggestions, the only issue that can be resolved definitely by this case is whether EPA's issuance of the challenged order to the Alt farm was arbitrary and capricious. This action is not a challenge to an EPA regulation, guidance, or other administrative interpretation of general applicability. *See* 33 U.S.C. § 1369(b) (providing for review of specified EPA promulgations and determinations under the CWA only in the Courts of Appeals). No other farm's practices or CWA compliance is at issue in this case, nor are EPA's CWA regulations in general. Since any of Movants' member farms that "may" (Mem. at 7) be subject

---

[7] S*tare decisis* effects are also insufficient to satisfy the practical impairment test where participation as *amici curiae* can provide an adequate opportunity for a would-be intervenor to weigh in on the issues. *See Am. Nat'l Bank & Trust Co.*, 865 F.2d at 148; *United States v. Bliss*, 132 F.R.D. 58, 60 (E.D. Mo. 1990) ("[prospective intervenors] need not . . . achieve party status in order to have their input considered").

to similar administrative action in the future can challenge that action if and when it occurs,

Movants' cannot show that their interests will be impaired if intervention is denied.

## IV.   Movants Have Failed To Rebut the Presumption that Their Interests Are Adequately Represented by Plaintiff.

Movants have also failed to show "that the present litigants do not adequately represent [their] interest," which is the final requirement for mandatory intervention. *Westinghouse*, 542 F.2d at 216; Fed. R. Civ. P. 24(a)(2).  While that burden may be "minimal," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), it "cannot be treated as so minimal as to write the requirement completely out of the rule," *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984); *see also Westinghouse*, 542 F.2d at 216 (affirming denial of intervention).  Moreover, "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented."  *Westinghouse*, 542 F.2d at 216. To rebut that presumption, the movant "must demonstrate adversity of interest, collusion, or nonfeasance."  *Id.*; *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 205 (7th Cir. 1982) ("[W]here it is established that the parties have the same ultimate objective in the underlying action, the intervenors must demonstrate, at the very least, that some conflict exists.").  The presumption of adequate representation "has been applied many times" by courts in the Fourth Circuit.  *Bragg v. Robertson*, 183 F.R.D. 494, 496 (S.D. W. Va. 1998) (collecting cases).[8]  That presumption plainly applies here, and Movants have not attempted to rebut it.

---

[8] In *Bragg*, the court found that the proposed answer of movants, lessors of coal properties and mineral rights, was "for the most part, remarkably similar" to the answer of the coal mining association defendants already parties to the case and noted that "[g]enerally, this finding would support the Court's denial of the motion to intervene." *Id.* at 496 n.1.  However, in that case, the filings diverged in a fundamental way, as intervenors raised a new defense – that the relief sought in the lawsuit would constitute a taking.  *Id.* at 496.  Further, the intervenors rebutted the presumption of adequate representation by demonstrating that their interests as lessors in protecting property rights might be adverse to the defendants' interests as coal miners, which was bolstered by affidavits to that effect.  *Id.* at 496-97.  Accordingly, the court allowed

Movants bring the exact same claim and seek the exact same relief as Plaintiff.  Movants'
own characterization of what they "seek by this action" repeats verbatim Alt's characterization
of what she "seeks by this action."  *Compare* Movants' Compl. ¶ 6, *with* Alt Compl. ¶ 4.   AFBF
and WVFB's prayer for relief repeats Alt's prayer for relief verbatim.  *Compare* Movants'
Compl. at 20, *with* Alt Compl. at 12-13.  Indeed, with the exception of very minor differences in
wording, the critical parts of the two complaints – the claims and prayers for relief – are almost
identical.  *Id*.  And if the identical nature of Plaintiff's and Movants' objectives were not
abundantly clear from their pleadings, Movants remove any doubt as to whether the presumption
of adequate representation applies when they admit that "AFBF and WVFB seek identical relief
[to Plaintiff]."  Mem. at 4.

Despite these admissions, Movants have not attempted to show either adversity of
interest, collusion, or nonfeasance, one of which they "must demonstrate" to rebut the
presumption of adequate representation.  *Westinghouse*, 542 F.2d at 216.  In fact, Movants admit
that "AFBF and WVFB's interests are generally aligned with Plaintiff's interests."  Mem. at 4.

Movants make several implicit suggestions as to why their interests are not adequately
represented.  Movants cite case law granting intervention based on concerns that a party's
assertion of its claims "might be less vigorous" than the would-be intervenors due to financial
constraints (Mem. at 11 (citing *Teague*, 931 F.2d at 262)), and where the would-be intervenor
was found to have a "more significant interest" in the subject matter of the suit than the relevant
party (Mem. at 12 (citing *Shenendoah Riverkeeper*, 2011 WL 1870233, at *3)).  But Movants do
not actually argue that either of these concerns is present here.  Indeed, it is hard to imagine how
Movants could be considered to have a greater interest in, or to be more likely to vigorously

intervention.  Here, however, there is no divergence between Movants and Plaintiffs' claims at
all, and Movants have not shown any conflict between their interests and Plaintiff's interests.

contest, the lawfulness of an order requiring *Plaintiff* to obtain an NPDES permit than Plaintiff

herself.  And given that Movant WVFB has publicly committed to funding Plaintiff's litigation

of this case,[9] it is hard to see how Plaintiff's "financial constraints" could then justify Movants'

intervention.  Movants again cite their "particular expertise" in the legal issues at hand, but as

noted above, "a group's particular expertise" is insufficient to justify intervention.  *Am. Nat'l*

*Bank & Trust,* 865 F.2d at 147.

　　　　Movants also seem to suggest that their interests might diverge from Plaintiff's should

Plaintiff pursue settlement.  Mem. at 12.  However, the desire to thwart any potential for

settlement is not an appropriate justification for intervention. *See Sierra Club, Inc. v. EPA,* 358

F.3d at 518 ("The Chamber says that it fears that the parties will settle the proceeding, but this is

a reason to deny rather than allow intervention. . . . Officious intermeddlers ought not be allowed

to hijack litigation that the real parties in interest can resolve to mutual benefit.").  And more

generally, potential differences concerning litigation tactics are insufficient to meet a movant's

burden to show inadequate representation.  *See Stadin v. Union Elec. Co.,* 309 F.2d 912, 919 (8th

Cir. 1962) ("Mere difference of opinion among attorneys is not of itself inadequate

representation . . . . If it were, intervention of right would become almost automatic."). Thus,

neither Movants' reference to concerns about settlement, nor their vague suggestion that their

interests "may require a different approach" to the litigation (Mem. at 13), rebuts the

presumption of adequate representation.

　　　　Finally, Movants attempt to bypass the adequate representation requirement by stating

that counsel for Plaintiff has concurred that Plaintiff may not be able to adequately represent

Movants' "broad interests."  Mot. at 1; *see also* Mem. at 12.  But no explanation is given for why

---

[9] *See* West Virginia Farm Bureau Press Release, *West Virginia Poultry Operation Files Suit*
*Against EPA*, June 20, 2012, *at* http://www.wvfarm.org/index.asp ("The West Virginia Farm
Bureau is supporting the Alt's lawsuit through its Legal Defense Fund.").

this might be the case, and there is "no reason to presume" that Plaintiff will not "vigorously and conscientiously" prosecute the action she has brought, concerning the facility she owns and operates. *British Airways Bd. v. Port Authority,* 71 F.R.D. 583, 584-85 (S.D.N.Y.), *aff'd* 556 F.2d 554 (2nd Cir. 1976). Furthermore, the mere fact that Movants have "broader" interests than Plaintiff in that they represent multiple facilities (Mem. at 13) does not demonstrate that Movants' interests are adverse to Plaintiff's interests, as required to rebut the presumption of adequate representation. *See Westinghouse*, 542 F.2d at 216. The sole question before this Court is whether the administrative order issued to the Plaintiff's CAFO is lawful, and Movants admit that their interests are "aligned" with the Plaintiff's interests on this issue. Mem. at 13.

Because Movants' objectives in this suit are identical to those of Plaintiff's, yet they have failed to rebut the resulting presumption of adequate representation, AFBF and WVFB are not entitled to intervene under Rule 24(a)(2). For this reason alone, the motion should be denied.

## V.   AFBF and WVFB Have Not Shown That Permissive Intervention Is Appropriate.

Movants briefly assert in the alternative – with minimal argument and no supporting case law – that they qualify for permissive intervention. However, Movants have not identified what "claims or defenses" they raise that permit intervention under Fed. R. Civ. P. 24(b)(1)(B). Movants assert an interest in the outcome of *Plaintiff's* claims, and therefore repeat those same claims in their proposed Complaint. However, they have not raised claims specific to their own interest – the concern that similar orders may be issued to other facilities (Mem. at 7-8) – nor can they, given that this case is necessarily limited to the question of whether the specific order issued to Plaintiff is lawful. *See Diamond*, 476 U.S. at 77 (permissive intervention "plainly *does* require an interest sufficient to support *a legal claim or defense which is founded upon that interest*") (second emphasis added) (citation omitted).

But even if Movants met the minimum standard set forth in Fed. R. Civ. P. 24(b)(1)(B), there are numerous reasons why this Court should exercise its "substantial discretion to deny permissive intervention." *Shaw v. Hunt*, 154 F.3d 161, 168 (4th Cir. 1998).  In considering whether permissive intervention is appropriate, the Court may consider "the nature and extent of the intervenors' interest." *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977); *Silver v. Babbitt,* 166 F.R.D. 418, 433 (D. Ariz. 1994) (same), *aff'd*, 68 F.3d 481 (9th Cir. 1995).  Here, as discussed in section II above, Movants' interest in the outcome of this case is generalized, speculative and attenuated.

Moreover, denial of a motion for permissive intervention is appropriate where the movant's interests will not be directly impaired by the disposition of the case.  *See Sutphen Estates v. United State*s, 342 U.S. 19, 23 (1951) (denying permissive intervention because "the claim of injury to [movant] is too speculative and too contingent on unknown factors to conclude that there was an abuse of discretion in denying leave to intervene"); *Francis v. Chamber of Commerce of U.S.*, 481 F.2d 192, 196 (4th Cir. 1973) (same); *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1124-25 (6th Cir. 1989) ("a charge of abuse of discretion in the denial of a motion for permissive intervention appears to be almost untenable on its face when an appellant has other adequate means of asserting her rights"); *Silver,* 166 F.R.D. at 433 (denying permissive intervention where applicants failed to show they would suffer injury from disposition of the lawsuit).[10]  Here, as discussed in Section III above, Movants' members will not be bound by any decision in this case, and they will be able to raise similar claims in subsequent proceedings concerning any administrative actions specific to their own facilities, if such actions occurs.

---

[10] *Cf. Arizona v. California*, 460 U.S. 605, 614-15 (1983) (allowing permissive intervention by Indian tribes because their interests in the specific waters at issue in the case "have been and will continue to be determined in this litigation" and "the United States' action as their representative will bind [movants] to any judgment.").

Courts also consider whether the would-be intervenors' interests are adequately represented by other parties in the permissive intervention context as well as the mandatory intervention context. *Clements*, 884 F.2d at 189 (denying permissive intervention where movant had failed to rebut presumption of adequate representation); *Silver*, 166 F.R.D. at 433. As discussed in section IV above, Movants have failed to rebut the presumption that their interests are adequately represented by Plaintiff, given that they raise the same claims and seek the same relief. Thus, granting permissive intervention would be inappropriate here for many of the same reasons that Movants are not entitled to mandatory intervention.

Furthermore, where it "presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Viterna*, 740 F.2d at 359; *see also British Airways,* 71 F.R.D. at 585 (also noting that "[i]t is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties"); *Silver*, 166 F.R.D. at 433. Should this Court desire Movants' input on the issues raised by Plaintiff – which are identical to the issues Movants set forth in their proposed Complaint – it can grant Movants an opportunity to express those views as amici curiae. *See McHenry v. C.I.R.*, 677 F.3d at 227 ("Numerous cases support the proposition that allowing a proposed intervenor to file an amicus brief is an adequate alternative to permissive intervention.").[11]

---

[11] Even if this Court were to allow Movants to intervene under Rule 24(b)(1)(B), it would be appropriate for the Court to limit the extent of Movants' participation in the litigation such that it is more akin to an amicus curiae, given that Movants assert the same claims as Plaintiff and this case concerns only Plaintiff's poultry facility. *See Columbus-America Discovery Group v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992) ("When granting an application for permissive intervention, a federal district court is able to impose almost any condition . . . ."). For example, Movants should be barred from disputing the contents of the administrative record given that the record is specific to Plaintiff's facility, and, as discussed *supra*, Movants should not be permitted to block any attempts by Plaintiff or the United States to settle this case.

Finally, Movants have not distinguished themselves from any other members of, or groups representing members of, the regulated industry.  Under their reasoning, each member of the poultry industry – or even the CAFO industry more broadly – would be equally well situated to intervene in this case.  *See* Mem. at 8 ("other areas of animal agriculture, including swine, beef, and dairy farms, will face the same threats from EPA").  Such a vast pool of potential intervenors is surely beyond the scope of what is useful to the disposition of the facility-specific order at issue here.  Accordingly, permissive intervention should not be granted.

## CONCLUSION

For the foregoing reasons, EPA respectfully requests that this Court deny AFBF and WVFB's motion for intervention.

Respectfully submitted,

WILLIAM J. IHLENFELD, II
United States Attorney

/s/   Betsy Steinfeld Jividen
BETSY STEINFELD JIVIDEN
Assistant United States Attorney, WV Bar #3592
1125 Chapline St., P.O. Box 591
Wheeling, WV 26003
Phone: (304) 234-0100
Fax: (304) 234-0112

IGNACIA S. MORENO
Assistant Attorney General

/s/   Amanda Shafer Berman
AMANDA SHAFER BERMAN
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611/Washington, D.C.  20044
Phone: (202) 514-1950
Fax: 202-514-8865
Email: amanda.berman@usdoj.gov

*Counsel for Defendant EPA*

21

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on Aug. 13th, 2012, I filed the foregoing Opposition to American Farm Bureau Federation and West Virginia Farm Bureau's Motion to Intervene with the Clerk of the Court electronically.  Accordingly, it is available for viewing and downloading from the ECF system.

Service has been made electronically through the ECF system on counsel for Plaintiff and counsel for the American Farm Bureau Federation and West Virginia Farm Bureau.

/s/  Betsy Steinfeld Jividen
 Assistant United States Attorney
 WV Bar #3592
 United States Attorney's Office
 P.O. Box 591
 Wheeling, WV 26003
 Phone:  304-234-0100
 Fax:  304-234-0112
 E-Mail:   Betsy.Jividen@usdoj.gov