IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| LOIS ALT d/b/a EIGHT IS ENOUGH,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>UNITED STATES ENVIRONMENTAL  )<br>PROTECTION AGENCY,  )<br>)<br>Defendant.  )<br>_____) | Case No. 2:12-cv-00042-JPB |

## AMERICAN FARM BUREAU FEDERATION AND WEST VIRGINIA FARM BUREAU'S REPLY IN SUPPORT OF MOTION TO INTERVENE

The American Farm Bureau Federation ("AFBF") and West Virginia Farm Bureau ("WVFB"), hereby file this reply in support of their Motion to Intervene (hereinafter "Mot.").

EPA's Opposition to AFBF and WVFB's Motion to Intervene (hereinafter "Resp.") presents smoke and mirrors to distract attention from the true nature of this case—a narrow legal challenge to EPA's jurisdiction and authority to regulate stormwater runoff from Plaintiff Lois Alt's ("Ms. Alt") farm yard. The Agency contends that this narrow legal question was resolved by regulation long ago, and that this case therefore turns on specific facts that are unique to Ms. Alt's farm. Thus, EPA's characterization of the case allows it to manufacture arguments that AFBF and WVFB lack either a protectable interest sufficient to support intervention as of right or a claim or defense sufficient to support permissive intervention.

But this case is not complex or fact-dependent. The paradigm for this case is <u>Sackett v. EPA</u>, 132 S.Ct. 1367 (2012), in which a unanimous Supreme Court recently reversed decades of

1

precedent to hold that the recipient of an EPA compliance order under the Clean Water Act ("CWA" or "the Act") is entitled to challenge the Agency's jurisdiction and authority to issue the order in an action brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq*.  Ms. Alt has done so here. She has challenged the Agency's legal authority to regulate stormwater discharges from her farm yard, and that is all she has done. This case is framed by the Complaint, and EPA cannot transform the case into anything else.  See Lincoln Prop. Co. v. Roche, 546 U.S. 81, 91 (2005) (noting that, in federal district court, the plaintiff is the master of her own complaint).

   Ms. Alt claims that, because stormwater runoff from her farm yard is exempt from regulation under the CWA's point-source permitting program, EPA lacks jurisdiction and authority to order her to obtain a permit, or to threaten her with sanctions for failure to do so. Compl. at 12.  Her claim is founded on the explicit statutory exemption for "agricultural stormwater discharges." 33 U.S.C. § 1362(14). As the statute provides, such discharges simply are not "point sources." Id. The Complaint does not take issue with any of the various factual allegations set forth in EPA's Order.[1] On the contrary, the Complaint effectively assumes EPA's factual allegations to be true for the purpose of this case, and asserts that EPA nonetheless lacks authority under the CWA to require a permit.

   In outlining the asserted authority for its Order, EPA recites the standard definitions of statutory terms set forth in the 1972 Federal Water Pollution Control Act Amendments, including the definitions of "discharge," "pollutant," and "point source." Order at 1-2.[2] EPA then concludes that "[r]espondent owns and operates a point source that… has discharged pollutants

---

[1] By not challenging the factual allegations set forth in EPA's Order, Ms. Alt has not waived any potential defenses or challenges to EPA's factual assertions that Ms. Alt could later assert if EPA attempts to enforce the Order.
[2] A copy of EPA's Order is attached as Exhibit A to Ms. Alt's Complaint.

from man-made ditches via sheet flow to Mudlick Run during rain events generating runoff without having obtained an NPDES permit," Order ¶ 32, and that Ms. Alt therefore is in violation of the Act. Order ¶ 33.

Omitted from the Agency's litany is any mention of the 1987 amendments to the Act in which Congress first empowered EPA to regulate stormwater and added the two specific provisions that govern the legal issue framed by the Complaint.  First, Congress enacted provisions granting limited authority for EPA to regulate runoff of rainwater containing pollutants, thereby extending the Act's permit requirements to a previously unregulated category of discharger.  This specific, new authority derives from the precise language added in 1987 to create subsection 402(p) of the Act, not from the general provisions and definitions of the 1972 enactment which, in the opinion of EPA and the Congress, had not applied to such dischargers. See 33 U.S.C. § 1342(p).  Second, in order to ensure that farmers would not be subject to this new authority, Congress specifically exempted "agricultural stormwater discharges" from the definition of "point source." 33 U.S.C. § 1362(14).  In discussing these new provisions, the Second Circuit observed that "it [is] reasonable to conclude that when Congress added the agricultural stormwater exemption to the [CWA], it was affirming the impropriety of imposing … liability for agriculture-related discharges triggered not by negligence or malfeasance, but by the weather—even when those discharges came from what would otherwise be point sources." Waterkeeper Alliance, Inc. v. EPA, 399 F.3d 486, 507 (2d Cir. 2005).

EPA's Response dismissively waves these provisions away, asserting that "the term 'agricultural stormwater discharges' is limited by EPA regulations to precipitation-related discharges of manure, litter, or process wastewater from a land area where 'the manure, litter or process wastewater has been applied ….'" Resp. at 3 (citing 40 C.F.R. §122.23(e)). If this

assertion were true, the absurd result would be that manure spread on cropland and pastures lawfully as fertilizer would qualify as agricultural stormwater that is exempt from regulation, while the small quantities of manure dust specks in Ms. Alt's farm yard would require a federally mandated permit.

But the Agency's assertion is not true. First, the regulatory language on which EPA relies was never intended to define the statutory exemption of "agricultural stormwater discharges" for all purposes; it was promulgated specifically, and solely, to define how the exemption should be applied in connection with "land application areas." EPA does not possess the authority to constrain the overall breadth of a statutory provision by speaking to its application in one context and then asserting that the provision therefore has no application in others. Second, with respect to all other areas of farms, EPA <u>has</u> <u>spoken</u> to the issue in unmistakable terms. The Agency's stormwater permitting regulations implementing section 402(p) make clear that "agricultural storm water runoff" <u>may not be</u> designated as an activity for which permitting is to be required. <u>See</u> 40 C.F.R. §§ 122.26(a)(1)(v); 122.26(b)(14).

Put simply, the issue in this case is whether Ms. Alt's view or EPA's view of the law is correct. Considered in light of the administrative record compiled by EPA, this legal issue will determine the outcome of the claims stated in Ms. Alt's Complaint. If the Court agrees with EPA's view of the law, then of course factual disputes may arise in any separate action that might be brought by EPA to enforce its Order, but those fact issues will not arise in this case because Ms. Alt has framed her Complaint as an APA action based on EPA's administrative record, and because she has raised only this single issue of law.

Contrary to the Agency's assertion, Resp. at 4 n.3, this merits issue also is highly relevant to the question of whether intervention is appropriate under Rule 24. As we discuss

below, it is relevant to whether AFBF and WVFB have an "interest sufficient to merit intervention," and one that, without intervention, "may be impaired." Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976); see also Teague v. Bakker, 931 F.2d 259, 260-61 (4th Cir. 1991). It also is relevant to whether AFBF and WVFB assert a "claim or defense" that shares with the main action a common issue of law sufficient to support permissive intervention. Both questions should be answered in the affirmative, and intervention should be allowed.

**I. AFBF and WVFB Have Sufficient Interests to Establish Their Right to Intervene.**

EPA contends that AFBF and WVFB lack sufficient interest in the outcome of this case to justify intervention as of right under Rule 24(a). Resp. at 7-11. As noted above, the Agency's argument hinges upon its erroneous characterization of the case as being "based on the specific factual circumstances of Plaintiff's facility." Id. at 7-8. From that faulty premise, EPA argues that the question of whether AFBF and WVFB's members could be subject to similar enforcement orders depends on a factual similarity to the Alt farm and, in any event, is "wholly dependent upon" agency enforcement discretion . Id. at 8.

But the interest of AFBF and WVFB's members is not simply their vulnerability to EPA enforcement actions; it is whether they have an obligation under the law to obtain a federally mandated permit to operate their farms. The Agency's argument fails because it ignores this fundamental point: if EPA's argument prevails in this case, virtually every large Concentrated Animal Feeding Operation ("CAFO") would likely have an obligation to obtain a federally mandated permit if it rains enough in their area to wash manure dust particles off their land and eventually into a jurisdictional water.3 All AFBF and WVFB members so situated would likely have a legal obligation to obtain CWA permit coverage. Those farmers' status as regulated

---

3 EPA has estimated that there are nearly 20,000 CAFOs nationwide. See NPDES Permit Writers' Manual for Concentrated Animal Feeding Operations (February 2012) at 1-2 (located at: http://www.epa.gov/npdes/pubs/cafo_permitmanual_chapter1.pdf) (last visited Aug. 27, 2012).

dischargers would not depend on other facts unique to their operations or on a decision by EPA or a State agency to take enforcement actions against them. Their legal obligations would arise automatically from this Court's ruling in EPA's favor.

EPA does not contest that virtually all poultry CAFOs and other types of enclosed animal agriculture operations will emit manure dust particles from their ventilation systems and will occasionally track or spill small amounts of manure outside where rainwater can wash the manure into a ditch leading eventually to a water body. Given these unavoidable consequences of normal farming practices, AFBF and WVFB's members have a clear interest in whether this Court will decide the legal issue presented in a manner that imposes on them a duty to obtain a permit for agricultural stormwater.

EPA counters that AFBF and WVFB rely only on cases allowing organizations to intervene where they challenge EPA regulations of general applicability. Resp. at 9. Of course, prior to the Supreme Court's decision in Sackett on March 21 of this year, there would be no precedent for allowing intervention in a case such as Ms. Alt has presented in her Complaint.[4] As explained above, Ms. Alt's Complaint presents a narrow legal question not unlike the legal issues typically raised in challenges to regulations of broad applicability. Here, EPA has put forth its interpretation of the Act in a compliance order rather than a regulation, and Sackett allows that interpretation to be challenged under the APA. The interests of AFBF and WVFB's members in the legitimacy of EPA's interpretation are just as clear and strong here as they would be in a rulemaking challenge under the APA.

The same reasoning refutes EPA's assertion that non-fact-dependent challenges to the Agency's statutory interpretations can be brought only in the Courts of Appeals pursuant to 33

---

[4] Although different issues might be presented were an organization to seek intervention in an action brought by EPA under Section 309 of the CWA to enforce a compliance order against an individual farmer, this is not such a case.

U.S.C. Section 1369(b)(1). Resp. at 11.  Where EPA asserts its interpretation of the law as the basis for its jurisdiction and authority to issue a compliance order, as it has done here, Sackett holds that the recipient of the order may challenge that assertion in the district court under the APA. By its very nature, an APA action is based on the administrative record and otherwise is non-fact-dependent. EPA does not contend that Ms. Alt is unable to present her legal issue to this Court; after Sackett, it could hardly do so. Because AFBF and WVFB have strong interests in the Court's resolution of that issue, they should be allowed to participate in Ms. Alt's well-founded lawsuit.  Moreover, Section 1369(b)(1) applies only to a concise list of specific EPA actions authorized under the Act, and the issuance of an order setting forth EPA's legal position concerning a statutory term is not on the list. 33 U.S.C. § 1369(b)(1).5

      EPA also contends that AFBF and WVFB's extensive experience and expertise in addressing this particular legal issue, "by itself," is insufficient to justify intervention. Resp. at 9. We do not assert our experience as though it were the sole interest of AFBF and WVFB in this case, as the discussion above amply demonstrates. And the Agency's reliance on cases holding that expertise or an interest in a legal issue is insufficient in circumstances "concerning property or facility-specific determinations," Resp. at 9-10, is misplaced here, as this case presents no such determinations. 6  As discussed above, this case presents a legal issue that will apply at

---

5 Indeed, in litigation in the Fifth Circuit involving, among other things, challenges to EPA letters involving similar Agency pronouncements, EPA took the position in its respondent's brief that Agency pronouncements on this precise issue were not among the specific EPA actions covered by CWA Section 1369(b)(1). See Final Brief of Respondent EPA at 92 in National Pork Producers Council  et al. v. EPA, No. 08-61093 (5th Cir.).

6 The cases cited by EPA on this point are distinguishable. See, e.g., Manasota-88, Inc. v. Tidwell, 896 F.2d 1318, 1322 (11th Cir. 1990) (denying intervention to association of electric generating facilities that sought to intervene in CWA citizen suit alleging EPA's failure to issue water quality standards for Florida, where movant failed to allege any protectable interest in the relief sought by plaintiff, could not identify any relevant noncompliant water bodies into which utilities discharge, and did not allege that any of its members discharge into the relevant water bodies); Jewell Ridge Coal Corp. v. Local No. 6167 United Mine Workers of Am., 3 F.R.D. 251, 255 (W.D. Va. 1943) (denying intervention to coal

virtually all poultry CAFOs and other enclosed livestock operations located where rainfall will contact dust and other incidental amounts of manure found anywhere on the farm.

Finally, EPA's assertion that it is "questionable" whether AFBF and WVFB have standing to intervene lacks merit for a number of reasons. Resp. at 10 n.6. First, the Fourth Circuit has not held that a proposed intervenor must demonstrate Article III standing in addition to satisfying the Rule 24 requirements for intervention as of right, and at least one district court in the Fourth Circuit recently has declined to require a showing of standing in addition to the requirements of Rule 24. See NAACP v. Duplin County, 2012 WL 360018, at *3 n.3 (E.D.N.C. Feb. 2, 2012) (acknowledging a circuit split on the issue and finding that "the court declines to impose the requirement that defendant intervenors must show Article III standing in order to intervene as a matter of right where the Fourth Circuit is silent on the issue. . ." and further noting that "[t]o hold otherwise would impose a stricter requirement on Rule 24(a)(2) intervention than what appears to be warranted under the law of this circuit").[7] Second, standing is not required for permissive intervention. See Shaw v. Hunt, 154 F.3d 161, 165-66 (4th Cir. 1998) (noting that "a permissive intervenor without standing may continue to be a party so long as the suit is kept alive by a plaintiff"). Thus, although AFBF and WVFB clearly have standing (as discussed below), AFBF and WVFB need not demonstrate standing to participate as

---

producers association that sought to intervene in a Fair Labor Standards Act case brought by a coal company against labor unions where "neither [the movant] nor its component members ha[d] any 'claim or defense' presenting any question of law or fact in common with the main action"); Sierra Club, Inc. v. EPA, 358 F.3d 516, 518 (7th Cir. 2004) (denying intervention to state chamber of commerce in petition for review of EPA letter and state issuance of construction permit to coal-fired power plant, noting, among other things, that the chamber's "concern [was] not a *legal* 'interest' (the permit at stake affects only one power plant) but a political or programmatic one: the Chamber favors more business and less environmental regulation").

[7] Although EPA cites to dicta from an unpublished opinion of the Fourth Circuit in 1990 suggesting that a proposed intervenor must have standing to assert its claim in a separate action, the cited opinion apparently has not persuaded other courts within the Fourth Circuit that the issue has been definitively decided by the Fourth Circuit. See EPA Resp. at 10 n.6 (citing Patterson v. Shumate, No. 88-2195, 1990 WL 122240, at *2 (4th Cir. Aug. 27, 1990).

permissive intervenors, and they arguably need not separately demonstrate standing once they have satisfied the Rule 24 requirements for intervention as of right.

Even if this Court requires a showing of standing for intervention as of right, AFBF and WVFB satisfy each of the elements of standing. To establish Article III standing, a party must show that: "(1) it has suffered an injury in fact that is concrete and particularized, and is actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) the injury likely will be redressed by a favorable decision." United States v. Arch Coal, Inc., 2011 WL 2493072, at *7 (S.D.W. Va. June 22, 2011) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)) (internal quotations omitted).  Additionally, associations may have representational standing either based on injury to the organization in its own right or as the representative of its members who have suffered injury.  Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 155 (4th Cir. 2000) (citation omitted).  "An organization has representational standing when (1) at least one of its members would have standing to sue in his own right; (2) the organization seeks to protect interests germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit." Friends of the Earth, Inc., 204 F.3d at 155 (citation omitted).

Here, Ms. Alt, as a member of the WVFB, which is a member organization of the AFBF, clearly has standing to sue in her own right, and has demonstrated that: (1) she has suffered an injury in fact that is concrete and particularized, and is actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) the injury likely will be redressed by a favorable decision.  Second, AFBF and WVFB seek to protect interests germane to the purposes of the respective organizations.  More specifically, AFBF and WVFB seek to ensure that other member families that own and operate poultry-broiler farms similar to Plaintiff's farm

are not denied the protection of the statutory exemption for "agricultural stormwater discharges" against obligations to obtain federally mandated permits to operate their farms.  Third, neither the claims asserted nor the relief sought in AFBF and WVFB's Proposed Intervenors' Complaint requires the participation of individual members in the lawsuit.  As noted above, the issue to be decided in this case is a legal one, not requiring individual farms or specific facts to resolve.  Accordingly, AFBF and WVFB have satisfied the requirements for standing.

## II. AFBF and WVFB's Interests May be Impaired by Disposition of This Case.

EPA acknowledges that, in assessing whether a movant's interest will be impaired, Rule 24 focuses on the practical consequences of the litigation.  Resp. at 11.  But EPA's contention that AFBF and WVFB will suffer no such impairment relies, once again, on its mischaracterization of the Complaint filed by Ms. Alt. The fact that EPA's Order is based on multiple factual findings, detailed at length in EPA's Resp. at 12, does not mean that the Court's determination of whether the Order is lawful will be unique to a narrow set of facts, as EPA asserts. Ms. Alt does not contest, in this proceeding, the central EPA findings in the administrative record –that manure dust is on the ground outside, that rainwater will wash that dust downhill to a waterway, or that the dust eventually will reach a jurisdictional waterway.  This Court's determination of the legal issue presented may well "be specific to" those general facts, as EPA asserts, <u>but those facts are common to virtually all poultry CAFOs and other enclosed livestock operations</u>, including those owned by AFBF and WVFB's members.

Consequently, this Court's decision on the legal issue presented could impair the interests of thousands of similarly situated farmers by imposing a legal precedent that no factual distinctions would overcome.  Faced with a legal obligation to apply for, and maintain compliance with, a CWA permit, those farmers' operations would be affected immediately

whether or not EPA ever decided to take enforcement actions against them. Their purported ability to protect themselves by challenging future compliance orders is a red herring.

This Court has previously recognized that the relevant inquiry is whether the proposed intervenors "will be practically disadvantaged if not permitted to intervene, not whether the [proposed intervenors] will be legally bound as a matter of *res judicata*." Shenandoah Riverkeeper v. Ox Paperboard, LLC, 2011 WL 1870233, at *3 (N.D.W. Va. May 16, 2011). And this Court has further noted that "*stare decisis* by itself supplies the practical disadvantage that is required for intervention under Rule 24(a)(2)." Id. Indeed, EPA agrees that "*stare decisis* concerns may sometimes provide a sufficient basis for intervention," but the Agency suggests that proposed intervenors "must show more than a possibility of an impact on future cases." Resp. at 13. However, the primary case on which EPA relies, involved much different factual circumstances—namely a situation where the proposed intervenor State failed to explain how a consent decree, to which the State was not a party, could have *res judicata* effects on a nonparty and *stare decisis* effects on the State's environmental enforcement efforts. United States v. Texas E. Transmission Corp., 923 F.2d 410, 414 (5th Cir. 1991).  By contrast,  AFBF and WVFB have sufficiently demonstrated that a ruling here in EPA's favor would practically disadvantage AFBF and WVFB's members—not merely through an impact on "future cases," but through imposition of an immediate legal obligation on their farming operations.

### III. AFBF and WVFB's Interests Are Not Adequately Represented By the Existing Parties.

EPA's argument that AFBF and WVFB's interests are adequately represented by Plaintiff Ms. Alt misconstrues the nature of the proposed intervenors' interests in this litigation, and fails to demonstrate that Plaintiff will adequately represent AFBF and WVFB's interests.  The primary case on which EPA relies, Virginia v. Westinghouse Elec. Corp., 542 F.2d 214 (4th Cir.

11

1976), involved entirely different factual circumstances that readily distinguish <u>Westinghouse</u> from the present case. In <u>Westinghouse</u>, the Commonwealth of Virginia sought intervention in a contract dispute between the Virginia Electric & Power Company (VEPCO) and Westinghouse Electric Corporation, which was one of thirteen similar actions consolidated before a single court. Virginia acknowledged that its primary interest in that litigation was participating in settlement negotiations, and conceded that its interests at trial would be adequately represented by VEPCO. <u>Westinghouse</u>, 542 F.2d at 216. In light of those facts, the Fourth Circuit explained that when a party seeking intervention (i.e., Virginia) has the same ultimate objective as a party to the suit (i.e., VEPCO), a presumption arises that the proposed intervenor's interests are adequately represented unless the proposed intervenor demonstrates adversity of interest, collusion, or nonfeasance. <u>Id.</u> Because Virginia's primary interest was intervening only for purposes of settlement negotiations, and Virginia conceded that VEPCO adequately represented its interests in prosecuting the lawsuit, the Fourth Circuit held that Virginia was not entitled to intervene as a matter of right for purposes of participating in settlement negotiations since its interests in the lawsuit were admittedly adequately represented by VEPCO. <u>Id.</u> The Fourth Circuit further noted other factors militating against intervention in that case, including the complexity and potential unmanageability of the litigation, since granting intervention for Virginia would likely encourage thirteen other states to seek intervention. <u>Id.</u> at 217.

  Here, the interests of AFBF and WVFB in intervention are markedly different from the interests of Virginia in <u>Westinghouse</u>.  By contrast to <u>Westinghouse</u>, AFBF and WVFB do not have the same ultimate objectives as Ms. Alt, do not concede that Ms. Alt adequately represents their broader interests, and are not seeking intervention for the mere purpose of participating in settlement negotiations.  Instead, AFBF and WVFB seek intervention for the broader purpose of

representing the interests of their members, which includes numerous other farmers throughout West Virginia and the United States whose interests may be adversely affected by a ruling in EPA's favor.  Thus, the requirements that the Court in Westinghouse imposed on Virginia—to demonstrate adversity of interest, collusion, or nonfeasance—are inapplicable here.  Moreover, the other factors of concern to the Court in Westinghouse, such as the potential for a flood of other State intervenors and the resulting unmanageability of the litigation, are not at issue here.  Indeed, in the event this Court grants intervention, AFBF and WVFB would agree to coordinate with Plaintiff in this case to avoid duplicative briefing.[8]

Notably, on the issue of adequate representation, EPA does not attempt to distinguish the present case from the situation in Shenandoah Riverkeeper v. Ox Paperboard, LLC, 2011 WL 1870233, at *3 (N.D.W. Va. May 16, 2011) where this Court permitted the West Virginia Department of Environmental Protection (WVDEP) to intervene as a plaintiff in a CWA citizen suit.  This Court recognized that "[t]he most important factor in determining adequacy of representation is how the interest of the [proposed intervenors] compares with the interests of the present parties." Shenandoah Riverkeeper, 2011 WL 1870233, at *3 (citation omitted). Although WVDEP's action arose "from the same nucleus of operative facts, share[d] common questions of law and fact, and form[ed] part of the same case or controversy as the action brought by the [citizen group plaintiffs]," id. at *1, this Court found that because the WVDEP had a "more significant interest" than the citizen group plaintiffs in the issues at hand, WVDEP's interests were not adequately represented and intervention as of right was warranted. Id. at *3.

---

[8] Additionally, in Bragg v. Robertson, 183 F.R.D. 494 (S.D.W. Va. 1998), another case cited by EPA, the district court there granted intervention as of right to owners and lessors of coal mineral rights and land in West Virginia, finding that the existing coal mining association defendants did not adequately represent the proposed intervenors' interests, noting among other things that "[i]n making this determination, the Court considers again the vast importance and potential effects of this case upon the environment and the mining industry of West Virginia." Bragg v. Robertson, 183 F.R.D. 494, 497 (S.D.W. Va. 1998).

13

Despite acknowledging that both <u>Shenandoah Riverkeeper</u> and <u>Teague v. Bakker</u>, 931 F.2d 259 (4th Cir. 1991) indicate that representation by existing parties may be inadequate where proposed intervenors have a more significant interest in the matter or the existing parties' assertion of their claims might be less vigorous than proposed intervenors, EPA incorrectly suggests that AFBF and WVFB do not actually argue that either of these concerns is present. Resp. at 16.  To the contrary, AFBF and WVFB clearly asserted that their broader interests in advocating on behalf of their members, including numerous other farmers throughout West Virginia and the United States, may not be adequately represented by Ms. Alt, whose interests are narrower. Mot. at 13.  Additionally, despite EPA's assertion that potential differences in litigation tactics are insufficient to show inadequate representation, Resp. at 17, EPA does not attempt to distinguish the logic and reasoning in <u>Nuesse v. Camp</u>, where the D.C. Circuit explained that a mere "tactical similarity" of the "present legal contentions" of a plaintiff and a proposed plaintiff-intervenor does not assure adequacy of representation or preclude a plaintiff-intervenor from the opportunity to appear. <u>Nuesse v. Camp</u>, 385 F.2d 694, 703 (D.C. Cir. 1967).

### IV. Permissive Intervention is Alternatively Warranted

AFBF and WVFB have asserted a specific claim that shares with Ms. Alt's action a common question of law.  Permissive intervention under Rule 24(b)(1)(B) therefore is authorized.

As noted above, we have explained at length why AFBF and WVFB's claim is specific to the interests of AFBF and WVFB members, whose family farms will be adversely affected by a ruling in EPA's favor on the only issue presented in this case.  In that event, AFBF and WVFB's members automatically would be confronted with legal obligations that Congress meant not to apply to them.  Far from "generalized, speculative and attenuated," as EPA cavalierly asserts,

Resp. at 19, AFBF and WVFB's members' interests are as concrete and immediate as it gets. Because the adverse effects on them would stem directly from this Court's disposition of the legal issue presented, not from site-specific factual considerations or subsequent EPA enforcement actions, they would not be "able to raise similar claims in subsequent proceedings…specific to their own facilities," as EPA asserts. Resp. at 19. And the Agency's contention that AFBF and WVFB assert an interest in the outcome of Ms. Alt's claim rather than our own claim is mere semantics. Resp. at 18.  The movants and Ms. Alt both raise the same legal issue, and neither raises factual issues.  If the requirement of Rule 24(b)(1)(B)—that movants must present a question of law in common with the main action—cannot be satisfied by raising an identical legal issue, then it cannot be satisfied at all.  Permissive intervention is warranted and should be granted.9


Dated: September 4, 2012                              Respectfully submitted,

                                                      /s/ *Peter G. Zurbuch*
                                                      Peter G. Zurbuch
                                                      WV State Bar No. 5765
                                                      David E. Thompson
                                                      WV State Bar No. 5959
                                                      BUSCH, ZURBUCH & THOMPSON, PLLC
                                                      P.O. Box 1819
                                                      High & Court Streets
                                                      Elkins, WV 26241
                                                      Telephone: (304) 636-3560
                                                      Facsimile: (304) 636-2290
                                                      PZurbuch@bztlaw.com
                                                      DThompson@bztlaw.com

---

9 Although EPA suggests that AFBF and WVFB's participation as amici curiae might be an adequate alternative to intervention, EPA Resp. at 20, the Fourth Circuit has recognized that participation by proposed intervenors as amici curiae is generally not sufficient to protect against practical impairments, especially because "[a]micus participants are not able to make motions or to appeal the final judgment in the case." Feller v. Brock, 802 F.2d 722, 730 (4th Cir. 1986).  Accordingly, because participation as amici would not afford the same important rights as intervention, this Court should not view amici participation as an adequate substitute for intervention.

| | |
|---|---|
| Of Counsel: | James T. Banks (D.C. Bar No. 261156) |
| Ellen Steen | Adam J. Siegel (D.C. Bar No. 503064) |
| Danielle Quist | HOGAN LOVELLS US LLP |
| American Farm Bureau Federation | 555 Thirteenth Street, NW |
| 600 Maryland Ave., SW | Washington, D.C. 20004 |
| Suite 1000W | Telephone: (202) 637-5600 |
| Washington, D.C. 20024 | Facsimile: (202) 637-5910 |
| Tel: (202) 406-3616 | james.banks@hoganlovells.com |
| | adam.siegel@hoganlovells.com |

*Counsel for American Farm Bureau Federation and West Virginia Farm Bureau*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2012, I electronically filed the foregoing Reply in Support of Motion to Intervene with the Clerk of the Court using the CM/ECF system, which sent electronic notification to counsel of record.

/s/ *Peter G. Zurbuch*
Peter G. Zurbuch
WV State Bar No. 5765
David E. Thompson
WV State Bar No. 5959
BUSCH, ZURBUCH & THOMPSON, PLLC
P.O. Box 1819
High & Court Streets
Elkins, WV 26241
Telephone: (304) 636-3560
Facsimile: (304) 636-2290
PZurbuch@bztlaw.com
DThompson@bztlaw.com