UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

_____

)
LOIS ALT, d/b/a EIGHT IS ENOUGH,          )
                                          )
              Plaintiff,                  )        Case No. 2:12-CV-00042-JPB
                                          )
AMERICAN FARM BUREAU                       )
and WEST VIRGINIA FARM BUREAU,             )
                                          )        **THE UNITED STATES'**
              Plaintiff-Intervenors,       )       **MEMORANDUM IN REPLY**
        v.                                )        **TO RESPONSE OF INTERVENORS**
                                          )        **AND IN SUPPORT OF**
UNITED STATES ENVIRONMENTAL                )       **MOTION TO DISMISS**
PROTECTION AGENCY,                         )
                                          )
                                          )
              Defendant.                  )
_____   )


**UNITED STATES' MEMORANDUM IN REPLY TO RESPONSE OF INTERVENORS**

        American Farm Bureau Federation ("AFBF") and West Virginia Farm Bureau

("WVFB") (collectively, "Farm Bureaus") intervened in this case to challenge an administrative

compliance order issued to Plaintiff.  That Order has been withdrawn and the case is now moot.

Intervenors nonetheless seek to pursue this litigation to establish a legal precedent to apply to all

Concentrated Animal Feeding Operations ("CAFO"s).  However, other than the Plaintiff Alt's

facility, none of the Farm Bureaus' members' facilities have been identified or are before the

Court; the Court is provided with no fact-specific information regarding the extent to which

circumstances at such other CAFOs are similar to the conditions at the Plaintiff's facility.  There

is no way for this Court to know whether any of the unidentified CAFOs have conditions like

those that prompted EPA to issue the order to Plaintiff.  There is no indication as to whether such

1

other CAFOs have obtained National Pollutant Discharge Elimination System ("NPDES")

permits, or whether they have received administrative compliance orders to obtain such permits.

Thus, the Court is asked to opine on a legal issue of broad applicability with no factual record

and with no actual case or controversy before it.  As demonstrated below, this is not an

appropriate exercise of the Court's jurisdiction or use of its resources.

## ARGUMENT

### I.     Intevenors AFBF and WVFB Have No Further Interest in the Case.

The basis for Intervenors' participation in this case no longer exists.  As explained in our

Memorandum in Reply to the Response filed by Plaintiff, there is no longer a live case and

controversy between EPA and Plaintiff, and the Farm Bureaus do not have independent Article

III standing.  This Court's Order granting intervention by AFBF and WVFB in this case as a

matter of right was based on the finding that they had representational standing as organizations

because the Plaintiff, Mrs. Alt, was a member of WVFB which was itself a member of AFBF.

Order at 7.  As Plaintiff's claim is now moot, it can no longer form the predicate for standing of

the organizations of which she is a member.  *White Tail Park, Inc., v. Stroube*, 413 F.3d 451,

458-59 (4th Cir. 2005) (associational standing is derived from standing of the organization's

members).

In addition, this Court's decision granting intervention was based on recognition that the

Farm Bureaus had a "sufficient interest" in the outcome of the case because a decision in favor

of EPA would have a *stare decisis* effect on similar orders EPA may issue to other WVFB and

AFBF members.  Order at 10-11 ("a ruling here in EPA's favor would practically disadvantage

AFBF and WVFB's members – not merely through an impact on 'future cases', but through

imposition of an immediate legal obligation on their farming operations.").  If this Court does not

render a decision on the merits, then there will be no *stare decisis* effect to prejudice the Farm Bureaus or their members.  Thus, the interest that Intervenors sought to protect is no longer at risk.

**II.     This Court Lacks Jurisdiction Over the Farm Bureaus' Facial Challenge to EPA's Interpretation of the Agricultural Stormwater Exemption.**

Whereas Plaintiff sought a ruling from this Court that she should not be required to obtain a Clean Water Act ("CWA") permit for discharges from her facility, the Farm Bureaus seek a ruling from this Court that *all* CAFOs should be exempt from the CWA permitting requirements.  Specifically, Intervenors argue that the agricultural stormwater exemption from CWA permitting requirements should be interpreted to apply to manure and litter spillage at CAFO production areas and manure dust particles and feathers and litter emitted from ventilation fans at the production areas.  Even assuming, *arguendo*, that this case is not moot, the issue on which the Farm Bureaus seek this Court's ruling – the applicability of the agricultural stormwater exemption to production areas at CAFOs – is not properly before this Court.  That issue was addressed in EPA's CAFO rules, and the CWA vests exclusive jurisdiction for judicial review of such rules in the Courts of Appeal.  Moreover, such a challenge, even in the appropriate court, is now time barred.

A.     AFBF's Facial Challenge to EPA's 2003 Interpretation of the Agricultural Stormwater Exemption is Time Barred by Section 509(b) of the Clean Water Act.

Congress has expressly included CAFOs within the definition of a "point source" subject to permit requirements for discharges under the CWA, but excluded agricultural stormwater discharges from the definition "point source" subject to regulation under the CWA.  The term "point source" is defined as

> Any discernible, confined and discrete conveyance, including but
> not limited to any pipe, ditch, channel, tunnel, conduit, well,
> discrete fissure, container, rolling stock, *concentrated animal
> feeding operation*, or vessel or other floating craft, from which
> pollutants are or may be discharged. *This term does not include
> agricultural stormwater discharges* and return flows from irrigated
> agriculture.

CWA § 502(14) (emphasis added). It is thus clear that the agricultural stormwater exemption cannot apply to all discharges from CAFOs or the exception would swallow the definition.

In its 2003 CAFO rulemaking, EPA stated that the agricultural stormwater exemption may apply to precipitation-related runoff from land areas under the control of a CAFO in certain circumstances, but that discharges from a CAFO's production area are not eligible for the agricultural stormwater exemption. See, *National Pollutant Discharge Elimination System Permit Regulation and Effluent Limitation Guidelines and Standards for Concentrated Animal Feeding Operations (CAFOs)*, 68 Fed. Reg. 7176, 7198 (Feb. 12, 2003): "Under the final rule, as proposed, discharges from the production area at the CAFO (e.g., the feedlot and lagoons) are not eligible for the agricultural storm water exemption at all, because they involve the type of industrial activity that originally led Congress to single out CAFOs as point sources."

A facial challenge to EPA's interpretation of the agricultural stormwater exemption as applied to discharges from CAFOs should be raised before the agency in the first instance, and must be challenged in the Court of Appeals under the exclusive judicial review provision of the Clean Water Act. 33 U.S.C. 1369(b). In fact, AFBF participated in EPA's CAFO rulemaking proceedings in 2003 and in 2008, as well as the subsequent challenges to those Rules. See, *Waterkeeper Alliance, Inc. v. EPA,* 399 F. 3d 486 (2d Cir. 2005) (reviewing the 2003 CAFO Rule) and *Nat'l Pork Producers Council, v. EPA,* 635 F.3d 738 (5th Cir. 2011) (reviewing the 2008 CAFO Rule). As demonstrated below, AFBF failed to raise the issue when it had an

4

opportunity to do so in 2003, and when the issue was raised in the 2008 lawsuit, the Court of

Appeals dismissed the challenge.

The 2003 CAFO Rule

In the 2003 CAFO Rule, EPA defined the agricultural stormwater exemption to

encompass precipitation-related runoff resulting from land application of manure as long as the

application complied with specific requirements.  40 C.F.R. 122.23(e).  EPA stated in the

preamble to the rule that agricultural stormwater could not encompass discharges from CAFO

production areas.  68 Fed. Reg. 7176-01.  The EPA defined CAFO "production areas" to include

a facility's animal confinement areas (such as poultry houses).  40 C.F.R. 122.23(b)(8).

The 2003 CAFO Rule was challenged by both environmental groups and industry,

including AFBF, in *Waterkeeper Alliance, Inc. v. EPA,* 399 F. 3d 486 (2d Cir. 2005).  The

environmental petitioners challenged EPA's definition of the agricultural stormwater exemption,

arguing that the CWA requires that all discharges from CAFOs are point source discharges

subject to CWA regulation and that EPA lacked authority to exempt runoff from land application

as agricultural stormwater.  The court upheld EPA's interpretation that the CWA's definition of

"point source" authorized the regulation of CAFO discharges, but exempted such discharges

from regulation to the extent that they constituted agricultural stormwater.  *Waterkeeper

Alliance,* 399 F.3d at 507.  The court recognized that the CWA expressly defines "point source"

to include CAFOs and thus the Act "not only permits, but demands," that land application

discharges be construed as discharges "from" a CAFO to the extent that they are not otherwise

agricultural stormwater.  *Id.* at 510.

AFBF was a petitioner in the *Waterkeeper* case and could have challenged EPA's

interpretation of the scope of agricultural stormwater exemption as too narrow, but it failed to do

5

so.  Counsel for AFBF in this case also participated in the *Waterkeeper* case as counsel for the National Chicken Council, which was another petitioner challenging the 2003 Rule, and could also have challenged EPA's statement that the agricultural stormwater exemption does not apply to discharges from the production area.  However, the briefs filed by AFBF and the National Chicken Council only addressed the agricultural stormwater exemption in the context of land application areas.  Neither petitioner challenged EPA's interpretation that discharges from CAFOs were subject to regulation, and neither suggested that discharges from production areas could or should be subject to the agricultural stormwater exemption.

The 2008 CAFO Rule

In 2008 EPA promulgated another rule to respond to the *Waterkeeper* decision.  See, "*Revised National Pollutant Discharge Elimination System Permit Regulation and Effluent Limitations Guidelines for Concentrated Animal Feeding Operations in Response to Waterkeeper Decision*," published at 73 Fed. Reg. 70,418-486 (Nov. 20, 2008).  Shortly after EPA issued the 2008 Rule, it issued three letters in response to questions from members of Congress and a CAFO executive.  The letters stated that:

> the CWA prohibits the discharge of all pollutants by a CAFO.
> Moreover, "[t]he term pollutant is defined very broadly in the
> CWA.... Potential sources of such pollutants at a CAFO could
> include ... litter released through confinement house ventilation
> fans."  The guidance letters further explained that "any point
> source discharge of stormwater that comes into contact with these
> materials and reaches waters of the United States is a violation of
> the CWA unless authorized by a [permit]."

*Nat'l. Pork Producers*, 635 F.3d at 748 (quoting the guidance letters).  One of the letters, which was sent to the CAFO executive, also discussed the agricultural stormwater exemption, stating that it, "applies only to precipitation-related discharges from land application areas ... where

application of manure, litter, or process wastewater is in accordance with appropriate nutrient management practices," and not to "discharges from the CAFO production area."  *Id.*

AFBF and other petitioners (the "Farm Petitioners") filed a petition for review of the 2008 CAFO Rule, challenging provisions regarding the land application requirements.  The National Chicken Council (which was represented by counsel for AFBF in this case) and U.S. Poultry & Egg Association (the "Poultry Petitioners") challenged the three guidance letters, arguing that they were final agency actions that were required to have undergone notice and comment pursuant to the Administrative Procedure Act.  *Nat'l. Pork Producers*, 635 F.3d at 748. The Poultry Petitioners' challenges to the letters were consolidated with the Farm Petitioners' challenges to the 2008 CAFO Rule in the Fifth Circuit Court of Appeals.

The Poultry Petitioners argued that the letters' statements that the agricultural stormwater exemption does not apply to the discharges of dust from poultry house ventilation fans at CAFOs constituted rulemaking.  As noted above, EPA addressed this issue in the preamble to the 2003 Rule, explaining that the agricultural stormwater exemption did not apply to discharges from the CAFO production area, and EPA's interpretation was not then challenged by any of the Petitioners.  The court therefore dismissed the challenge to the letters on grounds that the letters were not final agency action subject to judicial review.  The court explained that "[t]he EPA Letters do not change any rights or obligations and only reiterate what has been well-established since the enactment of the CWA—CAFOs are prohibited from discharging pollutants without a permit."  *Id.* at 756.  In so holding, the court affirmed that the EPA interpretation that Poultry Petitioners challenged was already established under the CWA and existing regulations, and was not a new interpretation creating a new obligation.

The Fifth Circuit also dismissed challenges to land application requirements brought by the Farm Petitioners (including AFBF), on the basis that these requirements had been established in the 2003 rule: "[t]hus, the Farm Petitioners' arguments had to be made within the 120-day time period for challenging rules promulgated by an agency.  33 U.S.C. § 1369(b)(1)."  *Id.* at 754.  The court specifically noted that "the Farm Petitioners, many of whom were parties in *Waterkeeper,* had the opportunity to respond to arguments made by other petitioners in the case. . . . They did not."  *Id.*  Thus, the Farm Petitioners' arguments were time barred.  The exclusive judicial review provisions of the Act would similarly bar any belated challenge to EPA's 2003 interpretation of the agricultural stormwater exemption.  As stated above, AFBF did not challenge EPA's interpretation that the agricultural stormwater exemption does not apply to the discharges from CAFO production areas, including emissions from ventilation fans, as set forth in the 2003 CAFO Rule, and its effort to do so now is in the wrong court and is time barred.

As the history of EPA's CAFO rulemaking and the judicial challenges demonstrates, the applicability of the agricultural stormwater exemption to CAFOs and their land application areas has been addressed by EPA through rulemaking and by Courts of Appeals in the exercise of their jurisdiction to review EPA rules.  Although this Court had jurisdiction to consider EPA's interpretation of the agricultural stormwater exemption "as applied" in the Order issued to Mrs. Alt, the basis for this Court's jurisdiction became moot when that Order was withdrawn.  This Court no longer has jurisdiction to consider an "as applied" challenge.  This Court did not originally, and does not now, have jurisdiction to consider the facial challenge to EPA's interpretation the Farm Bureaus seek to pursue.

8

**III.     The Voluntary Cessation Doctrine Does Not Apply to this Case.**

AFBF and WVFB argue that the case is not moot because EPA may reissue the Order

that it has withdrawn.  Given that this was an enforcement matter and that EPA has indicated in

writing to Mrs. Alt that it would not take an enforcement action provided the conditions at her

facility remain the same, the voluntary cessation doctrine does not apply.

First, the Farm Bureaus rely upon a line of cases the Fourth Circuit has described as the

"*City of Mesquite* line of cases" which is "generally limited to the circumstance, and like

circumstances, in which a defendant openly announces its intention to reenact precisely the same

provision held unconstitutional below."  *Doe v Shalala*, 122 F. App'x. 600 (4th Cir. 2004).  That

is clearly not the case here, as EPA has not expressed an intention to reissue the Order to Mrs.

Alt but, on the contrary, has represented that it "will not issue a similar Order to Mrs. Alt in the

future." Letter from J. Capacasa to D. Yaussy at 1 (submitted as Exhibit A to the United States'

Motion to Dismiss).  The Fourth Circuit has repeatedly refused to apply the voluntary cessation

doctrine to withdrawn ordinances in the absence of a strong indication that the challenged

ordinance is likely to be reenacted.  See, e.g., *Chapin Furniture Outlet Inc. v Town of Chapin*,

252 F. App'x. 566 ( 4th  Cir. 2007) (defendant represented to the court that it did not intend to

reenact the challenged ordinance); *Am. Legion Post 7 of Durham v. City of Durham*, 239 F.3d

601, 606 ("a lawsuit challenging a statute that no longer exists can become moot 'even where re-

enactment of the statute at issue is within the power of the legislature'"); *Brooks v. Vassar*, 462

F.3d 341, 348 ( 4th  Cir. 2006) ("Only if reenactment is not merely possible but appears probable

may we find the harm to be 'capable of repetition, yet evading review' and hold that the case is

not moot.").  In this case, reissuance of the Order to Mrs. Alt may be theoretically possible, but it

9

is certainly not probable, and EPA has represented that it will not issue a similar order to Mrs. Alt under the existing circumstances.

Moreover, the cases relied upon by the Farm Bureaus involve the repeal and possible reenactment of statutes or ordinances which apply generally to the regulated community - unlike the Order in this case, which applied only to Mrs. Alt and her CAFO.  Statutes and ordinances are instruments that apply generally to a broad set of circumstances and are inherently different from compliance orders that address specific circumstances.  For this reason, a government representation that it will not reissue an individual order is more reliable than a similar representation regarding a statute or ordinance.  Consequently, the Farm Bureaus' reference to the possibility that EPA may issue a similar order to another CAFO is not relevant; the question in this case is whether there is a probability that EPA will issue a similar order to Mrs. Alt.  For reasons explained more fully in the United States' Memorandum in Reply to Alt Response, that it not at all probable.

Further, none of the cases relied upon by the Farm Bureaus involved the exercise of enforcement discretion.  We refer to and incorporate the argument in the United States' Memorandum in Reply to Alt Response demonstrating that EPA's withdrawal of the Order in this case is committed to agency discretion and is not subject to review.

Finally, even if the Court could properly apply the voluntary cessation doctrine on the facts of this case, it should nonetheless dismiss the case based on prudential mootness.  See 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533 at 266-70 (3d ed. 1998).  Unlike Article III mootness, prudential mootness addresses not the power to grant relief, but the court's discretion in the exercise of that power.  A controversy, not actually moot, may be so attenuated that considerations of prudence and comity for coordinate branches of government

counsel the court to stay its hand, and to withhold relief it has the power to grant. *Chamber of Commerce v. U.S. Dept. of Energy*, 627 F.2d 289, 292 (D.C. Cir. 1980).  This distinction between Article III mootness and its discretionary counterpart has been long recognized by the Supreme Court.  *United States v. W.T. Grant Co*., 345 U.S. 629, (1953).

## CONCLUSION

For the foregoing reasons, the United States requests that the Court dismiss this case for lack of subject matter jurisdiction.

Dated:  April 8, 2013.

Respectfully submitted,

WILLIAM J. IHLENFELD, II
United States Attorney

/s/   Betsy Steinfeld Jividen
BETSY STEINFELD JIVIDEN
Assistant United States Attorney, WV Bar #3592
1125 Chapline St., P.O. Box 591
Wheeling, WV 26003
Phone: (304) 234-0100
Fax: (304) 234-0112

IGNACIA S. MORENO
Assistant Attorney General

/s/   Cynthia J. Morris
CYNTHIA J. MORRIS
AMANDA SHAFER BERMAN
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 7611/Washington, D.C.  20044
Phone: (202) 616-7554 (Morris)
Phone: (202) 514-1950 (Berman)
Fax: 202-514-8865
Email: c.j.morris@usdoj.gov
Email: amanda.berman@usdoj.gov
Counsel for Defendant EPA

11